# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

THOMAS A. KENNETT,            )
                              )
            Plaintiff,        )
                              )
v.                            )   Case No. CIV-08-329-FHS
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Thomas A. Kennett (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 19, 1966 and was 41 years old at the time of the entry of the ALJ's decision. Claimant completed his education through the tenth grade. Claimant has worked in the past as a wrapping and packing machine operator, warehouse order selector, small parts assembler, produce weigher, and candle pourer. Claimant alleges an inability to work beginning July 15, 2004 due to limitations caused by bipolar schizoaffective disorder,

social anxiety disorder, diminished intellectual functioning, depression with suicidal ideations, and anxiety.

**Procedural History**

On September 29, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's application was denied initially and upon reconsideration. On August 7, 2007, a hearing was held before ALJ Jennie L. McLean. By decision dated January 8, 2008, the ALJ found that Claimant was not disabled during the relevant period. On June 2, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform his past relevant work as a wrapping and package machine operator, warehouse order selector, small parts assembler, produce weigher, and candle pourer.

4

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to discuss all probative evidence which conflicted with his findings and to consider all of Claimant's impairments in his RFC assessment; (2) failing to properly evaluate Claimant's treating physician's opinions; and (3) failed to engage in a proper credibility analysis.

## RFC Assessment

Claimant asserts the ALJ failed to consider all probative evidence in the record. Claimant was first evaluated for psychological problems on March 27, 1992. Claimant was assessed by Dr. Mark Felix for parental fitness. Claimant expressed problems stemming from his childhood including stays in and removals from foster care. Dr. Felix found Claimant had a full scale IQ of 84 within the low average range of intelligence. His verbal IQ was 79, within the borderline intelligence range but which also demonstrated Claimant's verbal functioning to be very underdeveloped. (Tr. 208-10).

Dr. Felix evaluated Claimant in his home which he found to be dirty to the point of being unsanitary. Claimant was determined to be depressed but not suicidal. Dr. Felix diagnosed Claimant at Axis I: Dysthymia and Axis II: Avoidant Personality Disorder. (Tr. 210-13). He recommended individual psychotherapy but found

5

Claimant to be intellectually capable of working adequately if his emotional needs are met. (Tr. 213).

On June 21, 1993, Claimant was evaluated psychologically by Dr. Jacob Roseman. Dr. Roseman found Claimant to be oriented, alert, appropriate, and coherent with good eye contact. Claimant tended to be hypersensitive and easily put down. (Tr. 170, 174). Dr. Roseman diagnosed Claimant at Axis I: 1. Alcohol abuse, 2. Dysthymia, 3. Posttraumatic stress disorder; Axis II: Personality disorder; borderline, avoidant; Axis III: Deferred; Axis IV: Stressors - 1. Parental deprivation, 2. Years of foster care and abuse, 3. Conduct disorder of childhood, 4. Chronic depression, 5. Maladaptive personality; Axis V: GAF 80. (Tr. 175-76).

On November 19, 2003, Claimant was evaluated by Dr. C. Robin McGirk. Claimant reported he was depressed, unemployed for eight months, and had an inability to hold down a job since his second marriage 13 years prior. (Tr. 164). Claimant sought mental health treatment including medications. Claimant lacked any social activities outside of church attendance. (Tr. 164-65). Dr. McGirk diagnosed Claimant at Axis I: Provisional - Dysthymic Disorder; Axis II: R/O Borderline Intellectual Functioning; Axis III: Referring to the physician's report; Axis IV: Stressors - Financial, living conditions, lack of medical treatment - Severe; Axis V: GAF - Past year - 55, GAF - Present - 55. (Tr. 167).

On August 26, 2004, Claimant began seeing Dr. Wellie Adlaon for impatience, hyperactivity, and insomnia. Claimant was found by Dr. Adlaon to suffer from borderline personality disorder, social anxiety disorder, PTSD, and possible fetal alcohol syndrome. (Tr. 206). Claimant sought treatment for depression and chest pains throughout the remainder of 2004. (Tr. 194, 197, 200, 202).

On December 9, 2004, a Psychiatric Review Technique form was completed on Claimant by Dr. Tom F. Shadid. (Tr. 214). He concluded Claimant suffered from Affective Disorders – depression. (Tr. 214, 217). This condition moderately limited Claimants activities of daily living, ability to maintain social functioning, ability to maintain concentration, persistence, and pace. (Tr. 224).

A Residual Functional Capacity Assessment form was also completed on Claimant on November 24, 2004 by Dr. Shadid. Claimant was found to be moderately limited in his ability to understand and remember detailed instructions and his ability to carry out detailed instructions. (Tr. 228). He was also found to be moderately limited in his ability to interact appropriately with the general public. (Tr. 229). Dr. Shadid concluded Claimant could understand, remember and carry out simple and some complex tasks under routine supervision, relate to co-workers and supervisors for work purposes and tolerate some involvement with

the general public. (Tr. 230).

On September 15, 2005, Elizabeth Long, a licensed behavioral practitioner, wrote a letter to Claimant's wife's employer asking that the wife be permitted to stay with Claimant until his medication arrived because he had suicidal ideations which he might act upon at any moment. She believed the medication would arrive in two to three weeks. (Tr. 247).

On October 10, 2005, Claimant went to the emergency room complaining of chest pains and temporary loss of eyesight that was probably anxiety related. Claimant reported hallucinations and anxiety. (Tr. 284). Claimant left the hospital against medical advice after testing showed an abnormal ECG. (Tr. 293).

On October 6, 2005, Claimant reported to Mental Health Services of Southern Oklahoma with auditory and visual hallucinations. (Tr. 253). Claimant was found to be depressed with hallucinations, excessive anxiety, and alcohol use. (Tr. 254). Claimant was found to have a GAF of 50. Id.

On November 8, 2005, a Treatment Assessment and Plan was completed on Claimant by Dr. Alycea Meredith and a clinician. Claimant was noted to suffer from depression, insomnia, low self-esteem, mood swings, constant nighttime thinking, auditory hallucinations that tell him to harm himself, and headaches. (Tr. 249-52). Dr. Meredith diagnosed Claimant with schizoaffective

disorder, bipolar type. She found Claimant to have a GAF of 50. (Tr. 252).

On March 19, 2006, Claimant was evaluated by Dr. Meredith and found to be feeling better overall. He reported migraine headaches and occasional auditory hallucinations. (Tr. 265-68). Claimant continued to be treated with medication by Dr. Meredith throughout 2006 with positive results. (Tr. 259-263).

On January 25, 2007, Dr. Meredith reviewed Claimant's treatment and results. She noted Claimant's continued problems with depression, anxiety, and mood swings. Episodes would last about two weeks with anxiety, isolation, occasional suicidal ideations without planning, and excessive inactivity. (Tr. 272). Claimant also reported concentration problems and manic behavior. (Tr. 272-73).

On May 15, 2007, Dr. Meredith completed a Residual Functional Capacity Assessment form on Claimant. She found Claimant was markedly limited in his ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, ability to understand and remember detailed instructions, ability to carry out very short and simple instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances, ability to sustain an ordinary routine without special supervision, ability to work in coordination with or proximity to others without being distracted by them, ability to make simple work-related decisions, ability to complete a normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to interact appropriately with the general public, ability to ask simple questions or request assistance, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, ability to respond appropriately to changes in the work setting, ability to be aware of normal hazards and take appropriate precautions, ability to travel in unfamiliar places or use public transportation, and ability to set realistic goals or make plans independently of others. (Tr. 301-05).

In his decision, the ALJ found Claimant could perform light to medium unskilled work, generally, and his past relevant work in these categories, specifically. (Tr. 30). He determined Claimant suffered from the severe impairments of bipolar disorder and signs

of a personality disorder. (Tr. 25). Yet, he also found Claimant retained the RFC to perform a full range of work at all exertional levels, but limited to repetitive work with no significant public contact or customer service involvement. (Tr. 28).

Claimant contends the ALJ erred in not discussing Dr. Felix's, Dr. Roseman's, and Dr. McGirk's psychological evaluations and by doing so, failed to appreciate the severity of his mental impairments found by Dr. Meredith. The ALJ also failed to discuss many of the treatment records stemming from Claimant's hospitalizations.

In evaluating the evidence considered by the ALJ, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). However, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Id.

In this case, the ALJ failed to discuss medical evidence contained in the record which, on its face, appears to be both probative and relevant to the ultimate decision as to whether substantial evidence supports a finding of disability. The

11

evidence included treating physician assessments which typically carry significant weight, unless specifically discounted with appropriate reasoning by the ALJ. On remand, the ALJ shall specifically reference all evidence considered and not considered in the formulation of his decision in accordance with the prevailing authority.

### Treating Physician's Opinions

Claimant also asserts the ALJ failed to afford Dr. Meredith's opinions with the appropriate weight they were due. The ALJ primarily rejected Dr. Meredith's findings of marked limitations because "Dr. Meredith's treatment notes do not reflect the degrees of limitations reported in the May 2007 assessment form." The ALJ also found the medical record as a whole did not support Dr. Meredith's conclusions.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not

entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's findings are flawed since she did not consider all of the prior medical opinions of treating physicians. Moreover, the ALJ found the medical evidence did not support a finding of continuous impairment for a 12 month period. This finding is not supported by Dr. Meredith's medical record. Additionally, the ALJ found Claimant suffered an episode of decompensation in May of 2007 yet found no support for Dr. Meredith's limitations on work related activities. On remand, the ALJ shall consider Dr. Meredith's opinions in light of the entire record, make the required finding of what weight Dr. Meredith's opinions were afforded, and support that finding with a detailed recitation to the evidentiary record.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to

the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE